Luke Allan **LUND**, Appellant,

v.

**PAN AMERICAN MACHINES SALES,**
et al., Defendants.

**PLAYSKOOL, INC.,** etc., Defendant
and Third Party Plaintiff,
Respondent,

v.

**REED–PRENTICE,** etc., Third
Party Defendant,

and

**C.R. Manufacturing Company,** third
party defendant, Respondent.

No. C7–86–2129.

Court of Appeals of Minnesota.

May 19, 1987.

Peter W. Riley, William Kvas, DeParcq, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for appellant.

William A. Crandall, III, Lasley, Gaughan, Stich & Angell, Minneapolis, for Playskool, Inc.

John R. McBride, Donlin, McBride & Goetteman, P.A., St. Paul, for C.R. Manufacturing.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Luke Allan Lund appeals from a judgment dismissing his personal injury claim and an order denying his motion to vacate that dismissal. The trial court found Lund had no reasonable excuse for failure to file the requisite documents. We reverse.

## FACTS

On May 16, 1977 all the fingers of Lund's right hand were amputated while he was operating an injection molding machine for his employer, respondent C.R. Manufacturing Company. C.R. Manufacturing had purchased the machine sometime earlier as used equipment. According to Lund's expert, subsequent inspection of the machine revealed a number of defects, including a malfunctioning cam-activated safety device designed to prevent the machine from cycling while the door was open.

In October 1980, Lund commenced an action in strict liability, negligence and breach of warranty against Moslo Machinery Company, the manufacturer of the molding machine, Engineered Plastics Machinery Company, Pan American Machinery Sales and Playskool. The case ultimately proceeded against Playskool, the only solvent defendant, on the theory that it sold the machine either directly or indirectly through Pan American to C.R. Manufacturing with knowledge that it was unreasonably dangerous and without warning potential users of the hazardous condition. Playskool denied liability for Lund's injuries, claiming it was not engaged in the business of selling injection molding machines. It contended the machine was fully operable when traded to Pan American for new machinery and that Pan American alone acted as vendor.

Lund also claimed Playskool had modified the machine before trading it. In an August 1983 affidavit, Playskool's manager of industrial engineering stated that no modifications were made to his knowledge. However, in response to interrogatories in November 1983, the manager stated that it was unknown whether Playskool modified the machine in any way.

Lund's counsel stated in an affidavit that he prepared a statement of the case and on June 21, 1986 instructed his secretary to prepare a certificate of readiness to be filed with the court in his absence. Upon completion of another trial and his return to the office on June 27, 1986, counsel inquired if the documents were filed and was informed that they had been. The attorney inquired again on the status of the documents on June 30, 1986 and was assured they had been filed. An affidavit by the secretary substantiated these events.

On July 14, 1986 counsel discovered the original certificate of readiness had been put in the office file by mistake. The attorney immediately filed the certificate of readiness, summons, complaint and other documents with the court.

On July 29, 1986 the court returned the documents with a notation that the case had been dismissed on July 2, 1986. Dis-

missal was premised on an April 10, 1985 order of the Fourth Judicial District referred to in Special Rules of Practice, Fourth Judicial District, Rule 4.03. The order stated in part:

Cases filed with the Court prior to July 1, 1985 but not certified ready for trial, will be activated effective July 1, 1985, for the purposes of the initial filing date. All cases activated on this date will be dismissed on July 1, 1986, unless a Note of Issue/Certificate of Readiness has been filed or the case has been continued prior to the expiration of 12 months, under Rule 41.02, Rules of Civil Procedure.

Lund's counsel claimed he had no knowledge prior to the July 29 correspondence that the case was subject to dismissal and he was unaware a court file had been established that required filing of the summons and complaint prior to July 1, 1986. He moved to vacate on grounds of excusable neglect pursuant to Minn.R.Civ.P. 60.-02.

On September 30, 1986, the trial court denied the motion, finding the July 1 deadline for filing was well publicized, a court file was opened in February 1981, and misplacing a certificate of readiness was not a reasonable excuse for vacating a dismissal. Judgment was entered on November 17, 1986 dismissing the action with prejudice, and this appeal followed.

## ISSUE

Did the trial court abuse its discretion in denying Lund's motion to vacate dismissal of his claims?

## ANALYSIS

Both parties address the constitutionality of the April 10, 1985 order. Because we hold the trial court abused its discretion in denying Lund's motion to vacate, we find it unnecessary to reach these issues.

A court may relieve a party from a final judgment for "[m]istake, inadvertence, surprise or excusable neglect" or "any other reason justifying relief from the operation of the judgment." Minn.R.Civ.P. 60.02. A party seeking to vacate a judgment on these grounds must show (1) a reasonable claim on the merits, (2) a reasonable excuse for failure or neglect to act, (3) due diligence after notice of entry of judgment, and (4) that no substantial prejudice will result to the opponent. *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 30, 53 N.W.2d 454, 456 (1952); *See Sand v. School Service Employees Union, Local 284*, 402 N.W.2d 183 (Minn. Ct.App.1987) (Rule 60.02 relief applies to dismissals under 4th Judicial District special rule of practice requiring dismissal of cases not certified ready for trial by deadline).

However, the right to be relieved of a judgment is not absolute. *Howard v. Frondell*, 387 N.W.2d 205, 207 (Minn.Ct. App.1986), *pet. for rev. denied*, (Minn. July 31, 1986). Absent a clear abuse of discretion, a trial court's decision will be upheld. *Id.* at 207–08.

Reasonable Claim on the Merits

Lund claims he has reasonable claims of negligence, strict liability and breach of warranty against respondents. He claims the machine malfunctioned during proper use, causing his injuries. Playskool does not contest this. Lund also claims the machine was in an unsafe condition at the time of sale to C.R. Manufacturing and that Playskool knew or should have known of the defective safety device while in its possession.

Lund also asserts Playskool modified the machine before trading it. Playskool's maintenance supervisor stated in his deposition that the molding process on the machine had been modified at Playskool's direction sometime prior to 1968. He explained the modification made the machine more cost efficient. Playskool's manager originally denied that modifications were made and later stated that he was uncertain.

Playskool maintains that it was not engaged in the business of selling injection molding machines and therefore cannot be strictly liable as a vendor of a defective product. Lund asserts Playskool routinely puts obsolete molding machines into the

market through selling agents like Pan American in exchange for new machinery. Thus, even if Playskool did not sell the machine directly, he claims it nonetheless must accept responsibility for defective machinery sold indirectly. Based on these theories, we find Lund has adequately demonstrated he has a reasonable claim on the merits.

Reasonable Excuse

Initially, we note that since the case of *Finden v. Klaas*, 268 Minn. 268, 128 N.W.2d 748 (1964), Minnesota courts have found reliance on an attorney's assurances to be a reasonable excuse for failure to act. *Id.* at 271, 128 N.W.2d at 750. In *Finden*, an attorney had assured his client he would answer the complaint and conduct a defense. The defendant relied upon the attorney's assurances that the answer had indeed been filed. Plaintiff's attorney then advised both defendant and his attorney that the matter was scheduled for a default hearing as no answer had been filed. Defendant made no appearance himself or by his attorney and default judgment was entered. The supreme court noted that "[u]nder basic principles of agency, such neglect was chargeable to defendant." *Id.* (footnote omitted). Yet, the court held these facts constituted a reasonable excuse for failure to answer even though the defendant "made no attempt to explain his attorney's failure to answer." *Id.*

The *Finden* court based its holding on the following:

> [I]t is a cardinal rule that, in keeping with the spirit of Rule 60.02, in furtherance of justice, and pursuant to a liberal policy conducive to the trial of causes on their merits, the court should relieve a defendant from the consequences of his attorney's neglect in those case where defendant [meets the four part *Hinz* test].

*Id.* In applying the reasonable excuse factor of the *Hinz* test, the court stated:

> [D]efendant entrusted the matter entirely to his attorney and relied upon assurances that he was being protected in resisting plaintiffs' claims. * * * Under these circumstances, it would be difficult indeed to charge defendant himself with such indifference to the proceedings as would amount to inexcusable neglect within the contemplation of the rule * * *.

*Id.* at 271–72, 128 N.W.2d at 750–51.

More recently, the supreme court found similar attorney neglect to be a valid excuse in *Conley v. Downing*, 321 N.W.2d 36 (Minn.1982). There, the defendant "relied on her attorney's representation * * * that he was filing a brief." *Id.* at 41. No such brief was ever filed and judgment was entered against the defendant. Again, without discussing the attorney's explanation for failure to respond, the supreme court found the reasonable excuse element satisfied. *Id.* Another supreme court decision makes a distinction between attorney neglect and party neglect. In *Kosloski v. Jones*, 295 Minn. 177, 180, 203 N.W.2d 401, 403 (1973) the supreme court noted the trial court's finding that the defendant was *personally* guilty of inexcusable neglect, thus failing to meet the reasonable excuse requirement.

This court has drawn this same distinction in several recent decisions. In *Stelflug v. Benson*, 385 N.W.2d 892 (Minn.Ct. App.1986), a defaulting party "entrusted their case to their attorney and relied upon the attorney's assurances." *Id.* at 893. We held these circumstances did "not amount to inexcusable neglect within the meaning of Rule 60.02." *Id.* In *Howard v. Frondell*, 387 N.W.2d 205 (Minn.Ct.App. 1986), we affirmed the denial of a motion to vacate default judgment. There we stated:

> Neglect of the party itself which leads to entry of a judgment is inexcusable, and such neglect is a proper ground for refusing to reopen a judgment. [Citations omitted]. Even when a defaulting party alleges attorney neglect, a trial court may still properly refuse to reopen the judgment if the defaulting party is *personally* guilty of inexcusable neglect. [Citations omitted]. The record in this case simply fails to reflect any sensible excuse for appellants' failure to answer.

*Id.* at 208 (emphasis added). We upheld the vacation of a judgment in *Gunderson v. Lake County Board of Health*, 389

N.W.2d 241 (Minn.Ct.App.1986). There we found the defendant had once again " 'entrusted the matter entirely to his attorney' " and thus "should not be the victim of his attorney's carelessness." *Id.* at 244, quoting *Finden,* 268 Minn. at 271–72, 128 N.W.2d at 750–51.

These decisions reflect "a liberal policy conducive to the trial of causes on their merits", *Finden,* 268 Minn. at 271, 128 N.W.2d at 750–51, as well as a willingness to find a reasonable excuse for neglect where the defaulting party is not personally guilty of neglect and the party entrusts the matter to his attorney. Here, Playskool cannot cite any neglect on the part of Lund himself. Lund entrusted the case to his attorney. He should "not be the victim of his attorney's carelessness." *Gunderson,* 389 N.W.2d at 244. We hold Lund has established a reasonable excuse for failure to file the requisite documents.

Due Diligence

Lund discovered on July 29, 1986 that his case had been dismissed, and brought a motion to vacate within weeks. Playskool concedes and we hold that this element was satisfied.

Substantial Prejudice

Lund claims Playskool will suffer no prejudice if the judgment is vacated. Playskool argues that it was substantially prejudiced by the six years the case has been pending. However, the issue is whether Playskool will suffer prejudice if vacation of the dismissal is granted. Clearly, any delays prior to the date of dismissal are irrelevant to this issue. Playskool also claims that some witnesses may now be difficult to contact for trial. However, Playskool submitted no evidence or affidavit in support of this claim. In fact, Playskool has not yet attempted to contact the witnesses. Although some prejudice is inherent in every delay, *Vrooman Floor Covering Inc. v. Dorsey,* 267 Minn. 318, 320, 126 N.W.2d 377, 378 (1964), we find that no substantial prejudice will result to Playskool.

### DECISION

Lund has satisfied the test for relief from dismissal.

Reversed and order of dismissal vacated.